UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> ) <br> JOEY DESHAUN CLARK, ) <br> ) <br> Defendant. ) | 2:07-cr-00007 KJD-RJJ <br><br> REPORT &   RECOMMENDATION <br> OF UNITED STATES <br> MAGISTRATE JUDGE <br> (Defendant's Motion to Suppress #18) |

This matter came before the Court on Defendant, Joey Deshaun Clark's Motion to Suppress Evidence For Fourth and Fifth Amendment Violation (#18).  The Court has considered Defendant's Motion  (#18), the Government's Response (#22), and the testimony and evidence presented at the evidentiary hearing.

**BACKGROUND**

The defendant, Joey Deshaun Clark was indicted by the Federal Grand Jury and charged with being a felon in possession of a firearm.  The indictment was the result of weapons found after a police officer conducted a pat-down search on Defendant during a traffic stop on February 25, 2007. The charge is based on a Ruger 9 mm pistol, and a Kel Tec .380 caliber pistol found on Clark during the traffic stop.

The testimony at the hearing, established that on February 25, 2007, at approximately 12:40 p.m., North Las Vegas Police Officer Leonard Miller was on patrol in a marked police car.. Officer Miller was headed northbound on West Street when he saw a white 1994 Cadillac, Nevada license plate number 739UBD, traveling southbound approach. From two prior contacts, Officer Miller

1  recognized the passenger in the vehicle as Joey Deshaun Clark. Officer Miller looked into his rear-
2  view mirror, after the Cadillac passed, and noticed that the driver of the Cadillac failed to use its
3  right-turn signal while turning right onto Cartier Street. Officer Miller turned his marked patrol car
4  around and headed towards the Cadillac. While Officer Miller drove down Cartier Street, behind
5  the Cadillac, he noticed that when the vehicle stopped at the next stop sign located at Cartier Street
6  and Clayton, the left brake tail lamp on the vehicle did not work. At this point, Officer Miller
7  activated his overhead lights and siren and saw Defendant, in the front right passenger seat, look
8  back and then bend down as though reaching underneath his seat. Officer Miller, concerned for his
9  safety, called dispatch and requested back-up.

10  Once the vehicle was stopped, Officer Miller approached the Cadillac and requested from
11  the driver, Crystal Clemons, her driver's license, registration, and proof of insurance. Ms. Clemons
12  informed Officer Miller that she did not have a current Nevada driver's license. Officer Miller then
13  asked for some other form of identification to which Ms. Clemons produced a Nevada identification
14  card. Ms. Clemens informed Officer Miller that the Cadillac was owned and registered to the
15  Defendant. She produced the registration which showed registration in Defendant's name. Officer
16  Miller proceeded to ask Defendant if the vehicle was insured and whether the Defendant had a valid
17  driver's license. Defendant provided his Nevada driver's license and Officer Miller identified him
18  as Joey Deshaun Clark. Based on Defendant's suspicious behavior at the time of the stop, Officer
19  Miller asked both the driver and the Defendant for consent to search the vehicle, and both consented.

20  Officer Miller returned to his patrol car, walking backwards, to run a check on both the
21  driver and the passenger. While the individual checks were returning, Officers Cordova, Hafen, and
22  Chee arrived on the scene. Officer Miller informed the other officers that he was nervous because
23  Defendant appeared to reach under his seat when he initiated the stop. Officer Miller walked to the
24  driver's side of the Cadillac and asked Ms. Clemons to exit the vehicle. Officers Cardovo and Hafen
25  approached the passenger's side of the vehicle and began talking to Defendant. Ms. Clemons
26  stepped out of the car and walked to the front of Officer Miller's patrol car. Officer Miller asked
27  Officer Chee, a female, to pat-down Ms. Clemons for safety reasons. After the pat-down was
28  conducted, Officer Miller explained to Ms. Clemons why she was being cited. Officer Miller asked

1  Officer Cordova to have Defendant Clark exit the Cadillac in order to search the vehicle. Officer
2  Cordova told Defendant to exit the vehicle. Instead of exiting the vehicle, Clark slid across the seat
3  to the driver's side of the vehicle. Officer Hafen quickly moved to the driver's side of the vehicle.
4  Officer Hafen became concerned by Defendant's behavior and asked Defendant once again to exit
5  the vehicle. Defendant exited the vehicle. Officer Hafen then conducted a pat-down on Defendant
6  for safety reasons. During the pat-down of Defendant, Officer Hafen felt a gun in Defendant's
7  waistband and informed the other officers of a "413," the code for weapons. Officer Hafen placed
8  handcuffs on Clark and then removed two weapons from the Defendant's waistband, a Ruger 9 mm
9  pistol, and a Kel Tec .380 caliber pistol. Officer Miller secured the weapons. Officer Miller testified
10 that the duration, from the beginning of the stop until the weapons were found, was approximately
11 ten minutes.

12  Defendant was seated on the sidewalk curb. Officers Hafen and Chee began an inventory
13 of the vehicle. Defendant began talking to Officer Miller stating, "I need to get out of this." Officer
14 Miller responded by stating to Defendant, "tell the truth." Defendant then began to speak freely but
15 Officer Miller stopped Defendant and read Defendant his Miranda rights. Officer Miller asked
16 Defendant whether he understood these rights and Defendant stated that he understood his rights.
17 Officer Miller then asked Defendant, "having these rights in mind, do you wish to still talk to me?"
18 Clark stated, "yes," and began to tell Officer Miller incriminating statements.

19  First, the Court must determine whether Officer Miller's actions constituted an unreasonable
20 seizure within the Fourth Amendment. Second, whether the search conducted on Defendant was
21 lawful. Third, whether the scope of the traffic stop was constitutional. Lastly, whether Clark's
22 statements were made in violation of Defendant's Fifth Amendment rights.

### DISCUSSION

24  The Fourth Amendment provides, in pertinent part, "[t]he right of the people to be secure in
25 their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST.
26 amend. IV. The Supreme Court has stated that "[n]o right is held more sacred, or is more carefully
27 guarded, by the common law, than the right of every individual to the possession and control of his
28 own person, free from all restraint or interference of others, unless by clear and unquestionable

1  authority of law." Terry v. Ohio, 392 U.S. 1, 9 (1968).  This right protects people, and wherever a
2  person may harbor a reasonable expectation of privacy, from all unreasonable searches and seizures.
3  Terry, 392 U.S. at 9.  If a search or seizure is conducted without probable cause or without being
4  executed by a valid search warrant, an individual's Fourth Amendment rights are violated . Katz v.
5  United States, 389 U.S. 347, 357 (1967).

## I. Officer Miller's Traffic Stop

7  The Ninth Circuit holds that "[a]n automobile stop by police is a seizure within the meaning
8  of the Fourth Amendment . . . [and s]uch a stop is subject to the constitutional requirement that it
9  not be unreasonable." United States v. Garcia, 205 F.3d 1182, 1186 (9th Cir. 2000).  However, "if
10 the officer had probable cause to believe that a traffic violation had occurred, the seizure is
11 [considered] reasonable." Garcia, 205 F.3d at 1186-87.  Moreover, an officer may stop a vehicle,
12 based on the totality of the circumstances, if the officer has a reasonable or well-founded suspicion.
13 United States v. Olafson, 213 F.3d 435, 439 (9th Cir. 2000).  "Reasonable suspicion exists when an
14 officer is aware of specific, articulable facts, which, together with objective and reasonable
15 inferences, form a basis for suspecting that the particular person to be detained has committed or is
16 about to commit a crime." Olafson, 213 F.3d at 439.  In the Ninth Circuit, a traffic violation alone
17 is sufficient to establish reasonable suspicion. United States v. Choudhry, 461 F.3d 1097, 1100-
18 01(9th Cir. 2006).

19 In the present matter, Officer Miller had probable cause to stop Defendant's Cadillac.  While
20 Officer Miller observed the Cadillac, two traffic violations occurred.  These violations are found in
21 Nevada Revised Statutes §§ 484.343 and 484.555 (2007).  Section 484.343 provides, in pertinent
22 part, that:

> A driver shall not turn a vehicle from a direct course upon a highway
> unless and until such movement can be made with reasonable safety,
> and then only after giving a clearly audible signal by sounding the
> horn if any pedestrian may be affected by such movement and after
> giving an appropriate signal if any other vehicle may be affected by
> such movement.

NEV. REV. STAT §484.343 (2007).  Section §484.555 provides, in pertinent part, that "every motor
vehicle . . . must be equipped with two or more stop lamps . . . [and] must . . . [b]e activated upon

- 4 -

1  application of the brake." NEV. REV. STAT §484.343 (2007). Since Officer Miller observed two
2  alleged traffic violations, sufficient reasonable suspicion for a stop was established. Choudhry, 461
3  F.3d at 1100-01. At the hearing, the driver of the car, Crystal Clemons testified that the turn signal
4  was defective but that she activated it manually. Transcript (#44) at 7, lines 18-21 and at 16, lines
5  10-17. However, neither Ms. Clemons, nor anyone else checked to see if manipulating the turn signal
6  actually caused it to blink, signaling a turn. Transcript (#44) at 31, lines 10-15. Officer Miller's stop
7  of the vehicle was lawful and not an unreasonable seizure within the meaning of the Fourth
8  Amendment.

## II. Warrantless Search

According to the Fourth Amendment, the Government may not search a person unless a valid search warrant is executed; however, certain exceptions exist for this rule. Katz, 389 U.S. at 357. A warrantless search is permissible if it falls within one of the "specifically established and well-delineated exceptions." Katz, 389 U.S. at 357. Two established and well-delineated exceptions, relating to the case at hand, are: (1) pat-down searches as outlined in Terry, 392 U.S. at 27; and (2) searches conducted after consent is given. Florida v. Jimeno, 500 U.S. 248, 250-51 (1991).

**(1) Warrantless Pat-down Search**

The Supreme Court in Terry concluded that officers may conduct a " reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry, 392 U.S. at 27. This authority must be narrowly drawn to conduct a warrantless protective pat-down search justified by reasonable suspicion of possible danger. Terry, 392 U.S. at 27. It is not necessary that the officer be absolutely certain that the individual is armed but based on whether "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27. Moreover, in determining "whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry, 392 U.S.

at 27. Ultimately, it is within the discretion of the officer "to control the situation as he or she deems necessary to ensure the safety of the officer and the vehicle occupants." United States v. Williams, 419 F.3d 1029, 1031 (9th Cir. 2005). To this end, an officer is allowed, in a lawful traffic stop, to order both the driver and the passenger out of the vehicle to conduct a warrantless pat-down search for weapons. Maryland v. Wilson, 519 U.S. 408, 415 (1997).

In the present matter, Officer Miller's warrantless pat-down search was reasonable. The specific observations and knowledge of Officer Miller, included Clark's prior conviction of felon in possession of a firearm, Defendant kept looking back, and Defendant seemed to reach underneath his seat as if he were grabbing or hiding something during the stop. Officer Miller was concerned for his safety. Officer Miller had full discretion to keep the driver and Defendant in the vehicle or have them come out. However, Officer Miller felt safer to have them stay inside the vehicle until back-up arrived. In order for a pat-down to be valid, reasonable suspicion of possible danger must be present, and it was here. It is inconsequential that Officer Miller did not have the driver and Defendant step out of the vehicle at the outset of the stop. The Court finds that sufficient reasonable suspicion was shown to conduct a pat-down search of Clark

**(2) Consent Search**

"It is well settled that a search conducted pursuant to a valid consent is constitutionally permissible." United States v. Soriano, 361 F.3d 494, 501 (9th Cir. 2004). The Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." Jimeno, 500 U.S. at 251. The government bears the burden to show that consent to a warrantless search was voluntary. Jimeno, 500 U.S. at 251; see also Soriano, 361 F.3d at 501. The validity of a person's consent is a question of fact, and its resolution depends upon the totality of the circumstances. United States v. Cormier, 220 F.3d 1103, 1112 (9th Cir. 2000). The Ninth Circuit considers several factors to determine whether a person freely consents to a search: "(1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was told he had a right not to consent; and (5) whether the defendant was told that a search warrant could be obtained." Cormier, 220 F.3d at 1112. However, there is no single controlling factor.

1  United States v. Kaplan, 895 F.2d 618, 622 (9th Cir. 1990).  These factors are merely guideposts,
2  not a mechanized formula to resolve the voluntariness inquiry.  Soriano, 361 F.3d at 502.  No one
3  factor is determinative because just as "every encounter has its own facts and its own dynamics . .
4  . so does every consent."  United States v. Morning, 64 F.3d 531, 533 (9th Cir. 1995).

In the present matter, based on the totality of the circumstances and after considering the applicable factors, the Court concludes that Defendant voluntarily consented to the search of the Cadillac.  Clark was not in custody when consent was given to search his vehicle.  Second, Officer Miller's gun was not drawn when he asked for the Defendant's consent.  Third, because Clark was not in custody, it was unnecessary for Officer Miller to give Defendant Miranda warnings before asking for consent to search.  Soriano, 361 F.3d at 504.

There was no indication that Defendant was told that he had a right not to consent.  The Ninth Circuit has held that voluntary consent is not invalidated just because a police officer fails to: (1) tell the suspect that he can refuse consent; (2) give Miranda warnings; and (3) inform the suspect that a search warrant could be obtained.  Cormier, 220 F.3d at 1113.  In Cormier, the Ninth Circuit determined that since Cormier had a "very long, detailed and thorough experience with law enforcement," it lessened "the impact of the two absent factors because it increases the likelihood that Cormier was already aware of his rights to refuse consent and to remain silent."Cormier, 220 F.3d at 1113.  In the case at hand, Clark  had previously been arrested for felon in possession of a firearm.  His  prior experience with law enforcement "lessens" the impact of not being told that he had a right not to consent to the search.  Based on the totality of the circumstances, the Court is not persuaded that Defendant's consent was not voluntary because he was not told that he had a right not to consent.

Lastly, Officer Miller did not tell Clark that a search warrant could be obtained.  Defendant's argument that the presence of additional police officers called to the scene has the same threatening effect as being told that a search warrant could be obtained is inapposite.  Based on the totality of the circumstances, the Court finds that Defendant's consent to the search was the product of an essentially free and unconstrained choice.

### III. Scope of the Traffic Stop

1  The Supreme Court has held that, during an investigatory detention, police contact must be reasonably related in scope to the circumstances which initially justified the detention. Terry, 392 U.S. at 20. The Ninth Circuit holds that "[t]he length and scope of detention must be justified by the circumstances authorizing its initiation." Pierce v. Multnomah County, 76 F.3d 1032, 1038 (9th Cir. 1996). Once "an officer has obtained sufficient information to issue a citation, a continued detention without probable cause to arrest for a crime is unreasonable." Pierce, 76 F.3d at 1038. However, an "officer's subjective intentions do not make continued detention illegal, so long as the detention is justified by the circumstances viewed objectively." Ohio v. Robinette, 519 U.S. 33 (1996).

When passengers are involved in a detention, the reasonableness of the governmental detention depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by officers. Maryland, 434 U.S. at 413. On the public interest side is officer safety. Maryland, 434 U.S. at 413. On the personal liberty side "the case for passengers is stronger than that for the driver in the sense that there is probable cause to believe that the driver has committed a minor vehicular offense but there is no such reason to stop or detain passengers." Maryland, 434 U.S. at 413. However, "as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle . . .[t]he only change in their circumstances which will result from ordering them out of the car is that they will be outside of, rather than inside of, the stopped car." Maryland, 434 U.S. at 413-14.

In the case at hand, Clark argues that the traffic stop was unreasonable because the scope of the detention was not tailored to its initial justification which in turn prolonged the detention of the Defendant, who was the passenger. However, the Defendant prolonged his detention by giving consent to have his vehicle searched. He was not only the passenger in the vehicle, but also the owner of the vehicle. When consent was given to allow Officer Miller to search Clark's vehicle, the scope of the detention was extended. The Ninth Circuit states that "[a] suspect is free, however, after initially giving consent to delimit or withdraw his or her consent at anytime." United States v. McWeeney, 454 F.3d 1030, 1034 (9th Cir. 2006). When a person fails to limit the consent as to duration, it is implicitly limited by the person's right to withdraw his consent. McWeeney, 454 F.3d

- 8 -

1  at 1034; see also United States v. Mitchell, 82 F.3d 146, 151 (7th Cir. 1996) (noting that consent
2  remains valid and all seized items are admissible when a suspect does not withdraw his valid consent
3  to a search before the discovery of that item). Here, the Defendant did not at any time withdraw his
4  consent to have his vehicle searched. The consent given by Clark prolonged the detention until the
5  search was concluded or the consent was withdrawn.
6      Moreover, the search was justified due to the public interest of officer safety. Clark had
7  made suspicious movements that gave rise to Officer Miller's request for consent to search the car.
8  Officer Miller's contact was reasonably related in scope to the circumstances which initially justified
9  the detention. Viewing the circumstances objectively, Officer Miller's subjective intention to search
10 the vehicle was justified by the circumstances. The Court finds that the traffic stop was reasonable
11 and that the scope of the detention was tailored to its initial justification.

### IV. Incriminating Statements

13     The Fifth Amendment provides, in pertinent part, that "[n]o person . . . shall be compelled
14 in any criminal case to be a witness against himself." U.S. CONST. amend. V. It has long been
15 established that "when an individual is taken into custody or otherwise deprived of his freedom by
16 the authorities in any significant way and is subjected to questioning, the privilege against
17 self-incrimination is jeopardized." Miranda v. Arizona., 384 U.S. 436, 478 (1966). To avoid this
18 depravation, four warnings were established to protect individuals from self-incrimination: (1) a
19 suspect has the right to remain silent; (2) anything said by the suspect may be used against him in
20 a court of law; (3) the suspect has the right to have the presence of an attorney; and (4) if the suspect
21 cannot afford an attorney, one will be appointed for him prior to the questioning. Miranda, 384 U.S
22 at 478-79. The police officer giving the warnings are not required to recite the warnings precisely,
23 as long as they are clearly given and clearly understood. Duckwork v. Eagan, 492 U.S. 195, 203
24 (1989). Once the warnings are given, a suspect may voluntarily, knowingly, and intelligently waive
25 these rights. Miranda, 384 U.S. at 444. However, the government bears the heavy burden in proving
26 that the suspect's waiver was done voluntarily and was made with full "knowledge essential to his
27 ability to understand the nature of his rights and the consequences of abandoning them." Moran v.
28 Burbine, 475 U.S. 412, 424 (1986). In determining whether a lawful waiver was given, courts look

to the totality of the circumstances "to ascertain whether the accused in fact knowingly and voluntarily decided to forgo his rights." Fare v. Michael C., 442 U.S. 707, 725 (1979).

In the present case, the Court finds that Defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. Officer Miller clearly read the Defendant his Miranda warnings verbatim as found on his Miranda card and then asked Clark, "having these rights in mind, do you wish to still talk to me?" Clark freely and willingly stated, "Yes." The Court is persuaded that Clark understood these rights when Officer Miller recited them because this was not Defendant's first run-in with law enforcement. Similar to the Cormier analysis above, the Defendant had a "very long, detailed and thorough experience with law enforcement." Cormier, 220 F.3d at 1113. Defendant was free to say no; however, he knowingly waived his Fifth Amendment rights. Clark did not ask to speak with an attorney and was not coerced or threatened to speak with Officer Miller. Officer Miller did not have his gun drawn, rather the evidence presented to the Court showed that both Officer Miller and Clark were calm during the entire incident. Moreover, there was no evidence that Clark was under the influence of any substance that would affect his ability, judgment, or decision to speak. Based on the totality of the circumstances, Clark voluntarily, knowingly, and intelligently waived his Fifth Amendment rights against self incrimination. The Court finds that Defendant's incriminating statements were given by "rational intellect and free will". Blackburn v. Alabama, 361 U.S. 199, 208 (1960).

## CONCLUSION

The Court concludes that: (1) Officer Miller's actions constituted a reasonable seizure within the Fourth Amendment; (2) the warrantless pat-down search conducted on Defendant was lawful; (3) the scope of the traffic stop was constitutional; and (4) Defendant waived his Fifth Amendment rights against self-incrimination. Since no unlawful search or seizure occured, Defendant's Motion to Suppress (#18) should be denied.

## RECOMMENDATION

Based on the foregoing and good cause appearing therefore,

IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the Defendant's Motion to Suppress (#18) be **DENIED**.

**NOTICE**

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court on or before January 4, 2008.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. Thomas v. Arn, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991); Britt v. Simi Valley United Sch. Dist., 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 21st day of December, 2007.

ROBERT J. JOHNSTON
United States Magistrate Judge